UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DONNA J. MAY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:13CV1583 CDP |
| NCEP, LLC, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Donna May opened a charge account at Helzberg Diamonds, accrued a balance of over $5,000, and didn't pay it. After her account went into default, it was purchased by defendant NCEP. NCEP in turn hired a third-party debt collector, Stoneleigh Recovery Associates, for servicing and collection of the account.[1] Stoneleigh sent two letters about the account to May at her last known address.[2] NCEP eventually credit reported May's account, and May contacted NCEP on June 18, 2013, after seeing the negative entry on her credit report. She recorded that call. May contends that NCEP violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., during the call by failing to disclose that it was a debt collector and overshadowing her dispute rights. She also alleges that

---

[1]Stoneleigh is not a defendant in this case.

[2]Apparently, May did not receive these letters because she had moved.

NCEP violated the FDCPA by failing to send her a written notice containing the statutory-required disclosures and credit reporting her. May and NCEP each move for summary judgment on the issue of liability. After careful review of the entire record, I find that no material facts are genuinely disputed and that NCEP is entitled to judgment as a matter of law. I will therefore grant NCEP's motion for summary judgment for the reasons that follow.

## Standards Governing Summary Judgment

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(2)). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable

to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted).

## Undisputed Background Facts

NCEP purchases accounts receivable and bought May's Helzberg account on January 9, 2013, after it was in default. While NCEP does have a customer service department, that department provides account information only and is not authorized to accept payment. Instead, NCEP hires third parties, including Stoneleigh, to service and collect its purchased accounts.

After being hired by NCEP to service and collect May's account, Stoneleigh

sent May a letter. [Doc. #23-1 at 14]. The letter is dated February 14, 2013, and was sent to the address provided by May when she opened the account.[3] The letter lists the original creditor and account number and identifies NCEP as the current creditor. The letter states in relevant part:

> This account has been purchased by NCEP, LLC and has referred your delinquent account of $9,054.48 to this agency for collection. At this time, no attorney has personally reviewed the particular circumstances of your account. However, if you fail to contact this office and make arrangements to pay your account, this matter will be returned to our client who then may forward it to a local attorney for the purpose of filing suit . . . .This notice has been sent by a collection agency. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor. The law does not require our client to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt within the thirty-day period that begins with your receipt of this letter, the law requires us to suspend our efforts through litigation or otherwise to collect the debt until we mail the requested information to you . . . .

---

[3]The address was 5338 Darkmoor Ln, Imperial, Missouri 63052. Although May apparently moved at some point, there is no dispute that this was her address at the time she opened the account. In fact, during the call at issue May gave the customer service representative her current address but said that the account would be listed under this old address.

May did not respond to this letter. Stoneleigh sent her a second letter to the same address on April 5, 2013. Like the first letter, this letter also identifies the previous creditor, the current debt holder, the original account number, and the balance due. It further states, "We have previously notified you of our client's intentions regarding your account. As of this date, you have failed to contact this office to make arrangements on your account." It concludes by notifying May that "[t]his notice has been sent by a collection agency. This is an attempt to collect a debt. Any information obtained will be used for that purpose."

May did not respond to the second letter either, so NCEP reported May's account as "open, collection" to the credit agencies in June of 2013. After May saw the negative entry on her credit report, she called NCEP on June 18, 2013. May recorded the call, and a recording of the call is in the record.[4] During that call, May first reached a customer service representative at NCEP and told him that she was calling about "a debt that's on my credit report." The customer service representative located her account and then asked her if she "would like to make payment arrangements?" When May said that she had questions about the

---

[4]May actually called NCEP twice, but the first time she was apparently misdirected (through a series of automated prompts) to a different third-party collection agency which had no record of her account. Therefore, she called back a second time. It is this second call which is the subject of the instant dispute.

account, including the balance due, he told her that she would have to speak to a Stoneleigh representative. He then transferred May to a Stoneleigh representative, who immediately informed May that she was speaking to a debt collector, that the debt collector was attempting to collect a debt, and that any information would be used for that purpose. The Stoneleigh representative went on to answer May's questions about the account, including informing her that it had previously sent her two letters to 5338 Darkmoor Lane, which she acknowledged was her old address. During this call, the Stoneleigh representative explained to May that NCEP purchased her Helzberg account when it was in default and hired Stoneleigh to service and collect the account. When May asked him if Stoneleigh would garnish her wages if she found a job, he told her that they did not garnish wages. When May explained she could not set up a payment plan for repayment of the debt, the Stoneleigh agent said he understood and would make a notation in her file. May ended the call by telling him that she did not have a valid phone number and would contact him when she could make payment arrangements. May never called back about the debt, and she was never contacted by phone by NCEP or Stoneleigh.

## Discussion

In this action, May alleges that NCEP violated § 1692e(11) of the FDCPA

during the June 18, 2013 telephone call by not identifying itself as a debt collector[5] and § 1692g(b) by overshadowing her dispute rights.  She also alleges that NCEP violated § 1692g(a) of the FDCPA by not sending her the statutorily-required disclosures.  The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices.  See 15 U.S.C. § 1692.  Section 1692g(a) of the FDCPA requires collectors give debtors written notice of their rights as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, **unless the following information is contained in the initial communication** or the consumer has paid the debt, send the consumer a written notice containing–
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion

---

[5]NCEP argues in passing that it is not subject to the FDCPA because it is a debt purchaser, not a debt collector.  Although the Eighth Circuit Court of Appeals has yet to address this issue, other courts have held that the purchaser of debt in default may be considered a debt collector for purposes of the FDCPA.  See, Bridge v. Ocwen Federal Bank, FSB, 681 F.3d 355, 362 (6th Cir. 2012) ("debt collector includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition."); F.T.C. v. Check Investors, Inc., 502 F.3d 159, 172-73 (3d Cir. 2007) (debt purchasers who acquire defaulted obligation for purposes of collection are debt collectors, not creditors, under FDCPA); but see, Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1208 n.2 (9th Cir. 2013) (rejecting per se rule that debt collectors and creditors are mutually exclusive under FDCPA).  Even assuming for purposes of this motion that NCEP is subject to the requirements of the FDCPA, it is still entitled to summary judgment for the reasons set out below.

thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis supplied).

Here, May argues that NCEP has yet to send her the disclosure letter (sometimes called a dunning letter), see O'Connor v. Diversified Consultants, Inc., 2014 WL 859822, *2 (E.D. Mo. Mar. 5, 2014), required by § 1692g(a). May's position is that her June 18, 2013, phone call was the "initial communication" which triggered NCEP's obligation to send her a dunning letter. May is wrong, because the "initial communication" actually occurred when Stoneleigh sent her the February 14, 2013, letter. May does not argue that this letter runs afoul of the FDCPA, as there is no dispute that this letter complies with the requirements of § 1692g(a). Moreover, it is not relevant that May did not receive the letter because it was sent to her last known address instead of her current address. The FDCPA only requires that the debt collector send the notice, not that it establish receipt of

the notice by the debtor. See, 15 U.S.C. § 1692g (the "debt collector . . . shall send the consumer a written notice containing . . . ."); Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 261 (8th Cir. 1992) (statute of limitations begins to run at the time the debt collector places its communication in the mail, not at the time that the debtor receives it); Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1201 (9th Cir. 1999) (§ 1692g only requires that a validation of debt notice be sent to the debtor, not that it must be received by the debtor); Moore v. CCB Credit Services, Inc., 2013 WL 211048, *2-*3 (E.D. Mo. Jan. 18, 2013) (granting summary judgment on § 1692g claim where debt validation notice was sent, even though debtor claimed it was never received).

To evade summary judgment, May argues that NCEP was independently obligated to comply with the provisions of the FDCPA. May's argument is inconsistent with her position that "defendant is vicariously liable for Stoneleigh's collection attempts . . . ." Stated otherwise, May argues that NCEP was vicariously engaged in "debt collection" under the statute because it hired Stoneleigh, but that Stoneleigh's compliance with the FDCPA in its collection efforts cannot be attributed to NCEP. If NCEP is bound by Stoneleigh's collection efforts on its behalf, then Stoneleigh's disclosures must be attributable to NCEP as well. I find that Stoneleigh's collection efforts are imputed to NCEP as its agent,

which includes Stoneleigh's "initial communication" with May through its February 14, 2013, letter to her. Because the "initial communication" with May met the requirements of § 1692g(a), NCEP was not required to send her another dunning letter after the June 13, 2013, phone call. May's § 1692g(a) claim therefore fails as a matter of law.[6]

My finding that Stoneleigh's actions are imputed to NCEP as its agent is fatal to May's remaining claims. In this case, May never responded to NCEP's initial communication with her, which was Stoneleigh's February 14, 2013, letter. Thus, she did not dispute the debt or otherwise invoke the 30-day validation period under the statute. Section 1692g(b) provides that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt

---

[6]May's reliance on district court cases from other circuits holding that "[t]he requirement of providing valid disclosures under § 1692g applies to each debt collector," Francis v. Synder, 389 F. Supp. 2d 1034, 1040 n.2 (N. D. Ill. 2005), is unavailing here. In each of the cases cited by May on page 14 of her reply brief [Doc. #32], the collection activities were performed by subsequent collection agencies. That is not the case here. Stoneleigh is not a subsequent debt collector; instead, Stoneleigh's efforts were undertaken as an agent of NCEP. I also note that a district court within this circuit, relying on caselaw from the districts of Nevada and Maryland, has reached the opposite conclusion and held that "a § 1692g(a) notice by one debt collector serves as notice for subsequent attempts by different debt collectors to collect on the same debt." Marshall v. Deutsche Bank Nat. Trust Co., 2011 WL 345988, *5 (E. D. Ark. Feb. 1, 2011) (citing cases).

collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . ." 15 U.S.C. § 1692g(b). "The validation period is not a grace period; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir. 2010)(internal quotation marks and citations omitted). However "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . ." 15 U.S.C. § 1692g(b).

Here, May argues that NCEP's question about payment arrangements during the June 18, 2013, phone call "overshadowed" her dispute rights in violation of § 1692g(b).[7] Yet, there is no factual dispute that these statements were made well outside May's dispute period and therefore could not have "overshadowed" her

---

[7]May's claim also fails because NCEP never "demanded" payment from her during that June 18, 2013. NCEP's customer service representative asked May if she was calling to make payment arrangements when she told him that she was calling about "a debt that's on my credit report." Although "[a] violation of the FDCPA is reviewed using the unsophisticated-consumer standard, . . [it] also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection [attempts]." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317-18 (8th Cir. 2004) (internal quotation marks and citation omitted). "The unsophisticated consumer test is a practical one, and statements that are merely susceptible of an ingenious misreading do not violate the FDCPA." Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1056 (8th Cir. 2002) (internal quotation marks and citation omitted). An unsophisticated consumer would not be misled or confused by the customer service representative's question under these facts, even if an "overshadowing" claim could otherwise be brought. As soon as the agent found out the purpose of May's call, he directed her to Stoneleigh, which appropriately answered all her questions in compliance with the FDCPA.

dispute rights as a matter of law. May's 30-day dispute period was triggered by the February 14, 2013, letter, and the June 18, 2013, phone call occurred outside that 30-day period. NCEP's credit reporting in June of 2013 also fell outside May's 30-day dispute period and therefore could not have "overshadowed" her dispute rights as a matter of law.[8] May's § 1692g(b) claims fail.

Finally, May contends that NCEP violated § 1692e of the FDCPA, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Under § 1692e(11), a debt collector violates the FDCPA if it fails to "disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11). Here, May argues that NCEP failed to disclose its status as a debt collector during the June 18, 2013, phone call. May's claim is belied by the facts, as the undisputed evidence demonstrates that Stoneleigh, as an agent of NCEP, immediately identified itself as a debt collector acting to collect a debt on behalf of NCEP during the call. May was transferred to the Stoneleigh agent by NCEP's customer service representative as soon as May informed him that she had

---

[8]Although reporting a debt to a collection agency may constitute collection activity within the meaning of the FDCPA, see Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1035-36 (D. Minn. 2010), this does not change the outcome in this case because May's debt was never disputed and NCEP reported it after her 30-day dispute period ended.

questions about the account.  After making the required disclosures about Stoneleigh's status as a debt collector, the Stoneleigh agent accurately explained to May that NCEP had purchased her Helzberg account when it was in default and referred it to Stoneleigh for collection.  May was told the original creditor, the subsequent debt purchaser, the name of collection agency acting as the agent for the subsequent debt purchaser, the amount of the underlying account balance when it was referred for collection, and the previous efforts made to contact her about the debt.  There were no false, deceptive, or fraudulent statements made to May during the call, and NCEP's agent made no attempt to collect a debt from May before transferring her to Stoneleigh.  Under these circumstances, the undisputed evidence shows that NCEP did not violate § 1692e(11) during the June 18, 2013, phone call, as NCEP made the required disclosure through Stoneleigh.

There is no evidence from which a reasonable fact-finder could conclude that May was subjected to any abusive debt collection practices in violation of the FDCPA.  She received a dunning letter in compliance with the statute, and her account was properly reported as in collection after she failed to dispute the debt or exercise her dispute rights.  May was notified that she was speaking to a debt collector when she contacted NCEP on June 18, 2013, and no false, deceptive, or fraudulent statements were made to her during that call.  For these reasons, May's

FDCPA claims fail as a matter of law and must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#24] is granted, and plaintiff's complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment [#13] is denied.

A separate Judgment in accord with this Memorandum and Order is issued this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of May, 2014.